UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT L. TAGLIAFERI,
    Plaintiff,

v.   CASE NO. 3:09cv1592(WWE)

JANE DOE, ET AL.,
    Defendants.

**RULING ON DEFENDANTS' MOTION TO DISMISS**

The plaintiff, Robert Tagliaferi, currently incarcerated at MacDougall Correctional Institution, filed this action *pro se* under 42 U.S.C. § 1983 against Nurse Supervisor Cathy Durato and Dr. Ricardo Ruiz of Cheshire Correctional Institution and Nurse Supervisor Jane Doe and Dr. John Doe of Bridgeport Correctional Center.  On February 24, 2010, the Court filed an Initial Review Order dismissing all claims for monetary damages against the defendants in their official capacities and directing the plaintiff to identify the Doe defendants.  The court permitted the Eighth Amendment deliberate indifference to medical needs claims to proceed against Dr. Ruiz and Nurse Durato.

On September 27, 2010, the plaintiff filed an Amended Complaint naming the following individuals as defendants: Drs. Ricardo Ruiz, Alma Garcia-Rodriguez and James O'Halloran and Nursing Supervisors Cathy Durato and Anamarie Deebs.  The defendants have moved to dismiss the claims against them.  For the reasons that follow, the motion to dismiss will be granted.

**I. Standard of Review**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support

thereof." *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King*, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

However, the Court must liberally construe a *pro se* complaint. *Boykin v. Keycorp*, 521 F.3d 202, 213-214, 216 (2d Cir. 2008). In its review, the Court considers only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference and matters of which judicial notice may be taken. *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

## II.   Facts[1]

On January 25, 2008, the plaintiff was beaten during his arrest. He received multiple lacerations and blunt force trauma to his face, head and body. He received treatment for his injuries at the Hospital of St. Raphael in New Haven, Connecticut.

On May 5, 2008, he was received at New Haven Correctional Center. He explained to the intake nurse at the facility that he was experiencing severe head and

---

[1] The facts are taken from the Complaint, exhibits attached to the Complaint, the Amended Complaint and an exhibit attached to the plaintiff's memorandum in opposition to the motion to dismiss which the plaintiff has incorporated by reference in the Amended Complaint.

facial pain and problems with his vision.  Ten days later, correctional officials transferred him to Walker Correctional Institution.  Three days later, prison officials transferred him to Bridgeport Correctional Center.

Upon his arrival at Bridgeport Correctional Center, he explained to the intake nurse that he was experiencing severe headaches and problems with his vision.  On June 8, 2008, he sent a written request to the medical department explaining his injuries and symptoms.

On June 24, 2008, he sent a second request to the medical department explaining his injuries and sought treatment for his headaches and vision problems.  On June 26, 2008, he sent a third request for treatment.

On June 28, 2008, Nursing Supervisor Annamarie Deebs responded to his request and informed him that there was a four month wait to see the eye doctor and that he had not yet been sentenced to a term of imprisonment.  Supervisor Deebs suggested that the plaintiff contact the medical department again after he had been sentenced and that he have a family member send his eyeglasses to him from home.

On June 30, 2008, Supervisor Deebs examined the plaintiff and informed him that there was nothing she could do for his head and eye pain.  She informed him that she thought he might be suffering from allergies.  She instructed the plaintiff that he could buy over the counter pain medication in the prison commissary.

On July 15, 2008, the plaintiff sent a request to the medical department complaining that he had been denied medical treatment for the pain he was experiencing in his face and head.  On July 24, 2008, prison officials at Bridgeport Correctional Center transferred the plaintiff to Cheshire Correctional Institution

("Cheshire").

Prison officials at Cheshire placed the plaintiff in segregation. On July 29, 2008, the plaintiff submitted a request to the medical unit describing his injuries and the pain and vision problems he had been experiencing. On August 1, and 8, 2008, the plaintiff spoke to a nurse during her tour of his housing unit and requested to be examined by a doctor.

On August 13, 2008, Dr. Ricardo Ruiz listened to the plaintiff's complaints regarding his injuries and symptoms. He then examined the plaintiff and had the plaintiff perform several neurological hand-eye coordination tests.

Dr. Ruiz prescribed Motrin for the plaintiff's pain and explained that there was nothing else that he could do. The plaintiff requested that Dr. Ruiz review the medical records from the Hospital of St. Raphael where he was treated in January 2008. Dr. Ruiz informed the plaintiff that he must file a release to enable the prison facility to obtain copies of his medical records from the hospital.

The Motrin helped alleviate some of the plaintiff's pain. On September 5, 2008, the plaintiff sent a request asking permission to sign the medical records release for his records from the Hospital of St. Raphael and seeking an appointment with an eye doctor. The plaintiff signed the medical records release form in mid-September 2008.

On September 25, 2008, the plaintiff sent a request to be examined by a doctor and asked that the prescription for Motrin be re-filled. He also wondered whether the Hospital of St. Raphael had sent copies of his medical records to Cheshire's medical department.

On October 26, 2008, the plaintiff filed a Grievance seeking a Health Services Review of the diagnosis and treatment of his headaches, facial pain and his vision problem. The plaintiff submitted another request for medical treatment on October 28, 2008.

In response to the plaintiff's Grievance, Nursing Supervisor Cathy Durato examined the plaintiff on October 31, 2008. The plaintiff described his injuries and symptoms and Supervisor Durato indicated that she would schedule the plaintiff to see an eye doctor and to see Dr. Ruiz.

On November 19, 2008, an optometrist examined the plaintiff. The optometrist found that the vision in the plaintiff's right eye was weaker than the vision in his left eye, but that the plaintiff's retinas were normal.

Dr. Ruiz also examined the plaintiff on November 19, 2008 in connection with the plaintiff's Grievance seeking a Health Services Review. He asked the plaintiff to perform neurological hand-eye coordination tests. The plaintiff alleges that he was unable to perform these tests satisfactorily. Dr. Ruiz accused the plaintiff of faking and/or not really trying to perform the tests.

In the disposition section of the Grievance form, Dr. Ruiz noted that the plaintiff's neurological examination was normal, that he had reviewed the physical examination done by a doctor at the Hospital of St. Raphael in January 2008 and that he concluded that there was no change in the plaintiff's neurological condition. Dr. Ruiz prescribed Naprosyn to treat the plaintiff's headaches. The plaintiff seeks monetary damages and injunctive relief "from vindictive and retaliatory actions by the CDOC against the plaintiff for bringing this action." Amended Compl. at 18.

### III.    Discussion

The defendants move to dismiss on six grounds. They argue that: (1) the plaintiff has failed to state a claim of deliberate indifference to medical needs against defendants Ruiz, Deebs or Durato; (2) the plaintiff has failed to allege that defendants O'Halloran or Garcia-Rodriquez violated his constitutional rights; (3) the plaintiff has failed to exhaust his administrative remedies; (4) the plaintiff has failed to allege the personal involvement of the defendants in the alleged violation of his constitutional rights; (5) they are entitled to qualified immunity; and (6) the negligence claims are barred by Connecticut General Statutes § 4-165.

#### A.    Defendants O'Halloran and Garcia-Rodriguez

The defendants contend that the Amended Complaint includes no mention of Drs. O'Halloran or Garcia-Rodriguez. As such, the plaintiff has failed to allege that these physicians violated his constitutionally or federally protected rights.

To state a claim under section 1983, plaintiff must allege facts showing that the defendants, persons acting under color of state law, deprived him of a federally protected right. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982).

Plaintiff has sued Dr. O'Halloran and Dr. Garcia-Rodriguez in their individual capacities. However, he alleges no facts that they were aware of his injuries or his complaints of pain and vision difficulties. Further, the allegations fail to suggest that these defendants were involved in any medical treatment for those conditions or symptoms during his confinement at Bridgeport Correctional Center from approximately May 18, 2008 until July 24, 2008. Nor has the plaintiff alleged that defendants O'Halloran or Garcia-Rodriquez became aware of a denial or delay in treatment by

nurses at Bridgeport Correctional Center and failed to take action to arrange for necessary medical treatment. Accordingly, plaintiff has failed to allege that such defendants violated his constitutionally or federally protected rights. The motion to dismiss will be granted on the ground that the plaintiff has failed to state a plausible claim upon which relief may granted as to defendants Dr. O'Halloran or Dr. Garcia-Rodriguez.

### B. Defendants Ruiz, Deebs and Durato

Defendants Ruiz, Deebs and Durato contend that the plaintiff has failed to allege deliberate indifference to his serious medical needs.

At the time of the events set forth in the Amended Complaint, the plaintiff was a pretrial detainee. The Due Process clause of the Fourteenth Amendment dictates that a pretrial detainee may not be punished in a cruel and unusual manner. *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). Thus, in context of deliberate indifference to the medical needs of a state pretrial detainee, the Due Process Clause of the Fourteenth Amendment "requires no more" than the Eighth Amendment would in the case of a convicted prisoner. *Caiozzo v. Koreman*, 581 F.3d 63, 70 (2d Cir. 2009).

Thus, a defendant is liable for violation of the Fourteenth Amendment if plaintiff can prove that he had serious medical condition that was met with deliberate indifference. *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). To establish deliberate indifference, a plaintiff must show more than mere negligence, although proof of intent is not required. *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998).

### 1.   Dr. Ricardo Ruiz

The plaintiff claims that Dr. Ruiz did not adequately evaluate him and should have referred him for further evaluation and treatment.  However, plaintiff's disagreement with the extent of his doctor's medical evaluation and the conclusion or treatment prescribed by the doctor does not constitute deliberate indifference to medical needs.  *Chance,* 143 F.3d at 703.  Accordingly, the motion to dismiss will be granted as to the claims against Dr. Ruiz.

### 2.   Nursing Supervisor Deebs

The plaintiff alleges that Supervisor Deebs initially responded to his written request for medical treatment by telling him that there was a four month wait to see an eye doctor and that he should contact the medical department again after he had been sentenced to a term of imprisonment.  Two days later, Supervisor Deebs examined the plaintiff and told the plaintiff that she thought the plaintiff's headaches might be due to allergies.  She informed the plaintiff that he could purchase pain medication at the commissary.  Two weeks later, the plaintiff submitted a request to be seen by a physician.  Prison officials transferred the plaintiff to Cheshire nine days later.

These allegations against Deebs do not establish plaintiff's assertion of deliberate indifference to his serious medical needs.  The fact that Deebs may have incorrectly diagnosed him as suffering from allergies constitutes negligence at most.  Such medical malpractice, however, does not amount to deliberate indifference to

serious medical needs in violation of the Eighth Amendment. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). Accordingly, the motion to dismiss will be granted as to defendant Deebs.

### 3. Nursing Supervisor Nancy Durato

The plaintiff alleges that Supervisor Durato examined him in response to his grievance seeking medical treatment for his headaches and vision problems. At that time, she allegedly informed the plaintiff that his expectations regarding the type of medical treatment he might receive in prison were misguided. At the end of the visit, she informed the plaintiff that she would schedule appointments for him to see an optometrist and Dr. Ruiz. The plaintiff saw both Dr. Ruiz and an optometrist within a couple of weeks of his visit with Supervisor Durato.

Even if Supervisor Durato spoke to the plaintiff in a way that sounded as if she was not sympathetic to his medical needs, the facts alleged do not establish a claim for deliberate indifference to those needs. The motion to dismiss will be granted on the ground that the plaintiff has not alleged facts supporting a plausible claim that defendant Durato was deliberately indifferent to his medical needs.

## IV. Conclusion

Defendant's Motion to Dismiss [**Doc. #47**] is **GRANTED**. The court declines to exercise supplemental jurisdiction over any state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 715-26 (1966) (holding that, where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts). The plaintiff's Motion for Ruling on the Motion to

9

Dismiss [**Doc. #74**] is **DENIED**.  The Clerk is directed to enter judgment for the defendants and close this case.

The court notes that in June 2011, the plaintiff attempted to file a supplemental complaint to add counsel for the defendants, Assistant Attorney General Carmel Motherway, as a defendant in this action.  On March 30, 2012, Magistrate Judge Smith denied the motion to supplement the complaint without prejudice to re-filing it after the court ruled on the defendants' motion to dismiss.  In light of the fact that the court has granted the motion to dismiss and dismissed all claims against the defendants, any motion to file a supplemental complaint to add claims against Attorney Motherway would be moot.[2]

**Dated** this 29th day of May 2012, at Bridgeport, Connecticut.

```
                              /s/
                        WARREN W. EGINTON
                        SENIOR UNITED STATES DISTRICT JUDGE
```

---

[2]   Furthermore, even if the court had not granted the motion to dismiss all claims against the defendants, there is no basis to permit the plaintiff to supplement the Amended Complaint to add a claim that in June 2010 Assistant Attorney General Motherway obtained and reviewed the plaintiff's medical and mental health records in violation of the plaintiff's right to privacy.  As indicated above, the claims in the Amended Complaint relate to injuries sustained in January 2008 and medical treatment for those injuries from May to November 2008.  Rule 15(d), Fed. R. Civ. P. provides that "on motion and reasonable notice" to the parties, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading sought to be supplemented."  The court is permitted to grant a party leave to file a supplemental complaint only "when the supplemental facts connect it to the original pleading."  *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).  Any claims related to Attorney Motherway's alleged review of the plaintiff's medical and mental health records is unrelated to the alleged provision of medical treatment to the plaintiff by the defendants in 2008.